## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GINO MARIO RECCHIA, III, individually
and as owner of MASS ARMAMENT, LLC,
INC.,

      Plaintiffs,

v.                                                              Civil No.:

MAURA HEALEY, in her Official Capacity
as Governor of the Commonwealth of
Massachusetts and in her Individual Capacity,


      Defendant,

## **COMPLAINT**

## **PRELIMINARY STATEMENT**

On July 17, 2024, the Massachusetts legislature passed Bill H-4885 (hereinafter, "H-4885"), Massachusetts Governor Maura Healey signed it into law on July 25, 2024, and implemented it to become effective on October 2, 2024. The Act, referred to as "An Act Modernizing Firearm Laws", is unconstitutional in pertinent part in sections that concern with "assault type weapons" ownership, magazines, ammunition feeders, and the duties now required of firearm retailers relative to importation, sales and purchased.

Plaintiffs are not making any claims relative to other sections of H-4885; in other words, Plaintiffs do not challenge whether those other sections can stand constitutional muster since they have little or no effect on Plaintiffs' business at this time. However, sections of H-4885, enacted into law by the Commonwealth's Legislature and Governor, violate Plaintiffs' rights under the Bill of Rights to the United States Constitution, the Second Amendment right to bear

1

arms, the Fifth and Fourteenth Amendments rights to Equal Protection, and the Dormant

Commerce Clause of the United States Constitution.

## I. JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201,

2202 and 42 U.S.C. § 1983.

2.      This Court has personal jurisdiction over the Defendant because, *inter alia*, her actions,

acts and/or threats to act under the color of laws, policies, customs and/or practices of the

Commonwealth of Massachusetts and each act did so, does so and threatens to do so within the

geographic confines of the Commonwealth of Massachusetts.

3.      Venue is proper pursuant to 28 U.S.C. § 1391.

4.      The Eastern Division is appropriate pursuant to LR 40.1(d)(1)(E).

## II. PARTIES

5.      Plaintiff Gino M. Recchia, III (hereinafter, "Recchia") is a Massachusetts resident who is

the sole owner of Mass Armament LLC.

6.      Plaintiff Mass Armament LLC (hereinafter, "Mass Armament") is a firearms dealership

located at 95 Mechanic St., Unit 1 in Bellingham, Massachusetts. It was duly incorporated in

2018 within the Commonwealth of Massachusetts by Recchia.

7.      Defendant Maura Healey (hereinafter, "Governor Healey") is sued in her individual

capacity and in her official capacity as Governor of the Commonwealth of Massachusetts, who is

responsible for enforcing the laws that caused the injuries complained of, and who has authority

to change or modify such laws in a way that would alleviate Plaintiffs' injuries. As detailed

herein, Governor Healey has enforced the challenge laws, policies, customs, and practices

against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged

laws, policies, customs and practices against Plaintiffs.

## CONSTITUTIONAL PROVISIONS

8.     The Second Amended to the United States Constitution provides:

A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

9.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons

in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

10.    The Fourteenth Amendment to the United States Constitution provides in pertinent part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

11.    The Second Amendment "is fully applicable to the States." *McDonald v. City of Chicago*,

561 U.S. 742, 750 (2010); *see also id.* at 805 (Thomas, J., concurring).

12.    The "core lawful purpose" of the right to keep and bear arms is "self-defense." *Heller*,

554 U.S. at 571, 630; *accord McDonald*, 561 U.S. at 767-68.

13.    The Second Amendment "elevates above all other interests the right of law-abiding,

responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635.

14.    "Commercial regulations on the sale of firearms do not fall outside the scope of the

Second Amendment[.]" *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010). Rather,

"prohibiting the commercial sale of firearms . . . would be untenable under *Heller*." *Id.*

15.    Furthermore, "[t]he right to possess firearms for protection implies a corresponding right

to acquire and maintain proficiency in their use; the core right wouldn't mean much without the

training and practice that make it effective." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).

### III.  FACTS

16.     On or about July 25, 2024, Governor Healey, signed into law H-4885, entitled "An Act Modernizing Firearm Laws" (hereinafter, the "Act").

17.     *Inter alia*, the Act changed the definition of "assault-style firearm", including many of the most popular firearms or their copies sold in the United States, and others that will be named by a newly formed board and roster (Section 16); "feeding device" and "firearm", (Section 20); "large capacity feeding device" (Section 21); "large capacity firearm" (Section 22).

18.     *Inter alia*, the Act requires retailers to act as quasi law enforcement officers by confiscating licensing documents presented by customers that appear to be "expired, suspended or revoked" and; restricts to whom and under what conditions a retailer may sell firearms. (Section 123).

19.     *Inter alia*, the Act authorizes the forming of a "firearm control advisory board" which, among other things, will help make a list of which firearms can be sold and purchased in the Commonwealth of Massachusetts (Section 131½ *et seq.*).

20.     *Inter alia*, the Act virtually bans the "possess[ion], own[ership], sell[ing] or otherwise transfer[ring] in the commonwealth [sic] or import into the commonwealth [sic] an assault-style firearm, or a large capacity feeding device." (Section 131M).

21.     Mass Armament opened to the public in 2019.

22.     Recchia works at Mass Armament and usually employs two (2) others.

23.     Recchia receives all of his income from Mass Armament's business.

24.     Mass Armament sells new and used firearms of many types, including many of the items banned by the Act, that is, assault-style firearms and large capacity magazines and feeding devices, along with ammunition, parts, accessories, knives, collectables, cleaning supplies, and targets.

25.     Approximately 70% of Mass Armament sales comes from items banned by the Act.

26.     The majority of Mass Armament purchases are from out of state manufacturers, retailers, private sellers and other industry members. There are some in-store purchases and sales, but the majority of items are imported from outside the state—purchases now banned by the Act.

27.     The Act has restricted the majority of purchases and sales Mass Armament can hereon legally conduct.

28.     Mass Armament's main business is, and has been built up, centered around firearms and large-capacity magazines banned by the Act.

29.     It is estimated that approximately seventy percent (70%) of Plaintiffs' business will be lost because of the Act.

30.     It is estimated that approximately sixty percent (60%) of Mass Armament's business is conducted with out-of-state sellers and buyers.

31.     It appears possible at this early enforcement of the Act that Mass Armament may either lay off employees and/or go out of business.

32.     Mass Armament's business was built primarily by dealing in the firearms banned by the Act.

33.     As of the below date, Mass Armament's business has been reduced by an estimated fifty percent (50%) because of the Act.

34.     In 1994, Congress enacted legislation banning virtually the same firearms listed in the Act. *See*, Title XI of P.L. 103-322 (September 13, 1994), (codified at 18 USC 921 *et seq.*)

35.     Title XI was automatically repealed by Congress ten (10) years after it became enacted. *Sec. id.* Sec. 110105 (2).

36.     Federal efforts to reinstate the Title XI ban have been made since its repeal. All have failed. On April 17, 2013 the United States Senate failed to pass a bill similar to Title XI. Although the House of Representatives narrowly voted in favor of passing new firearms restrictions on July 29, 2022, the bill died in the Senate at the end of the term.

## IV.  CLAIMS

### COUNT I: (Dormant Commerce Clause)

37.     Plaintiffs reallege and incorporate Paragraphs 1-36 as if set forth again here.

38.     Under the United States Constitution, Art. I § 8, Congress has the power "to regulate Commerce with foreign Nations, and among the several States".

39.     The Defendant does not have the power under the Massachusetts Constitution, Part I, Art. IV, to overrule the United States Congress' Commerce Clause power, in that said Article specifically states that Defendant has the right to govern themselves except when such power is "[expressly] delegated to the United States of America in Congress assembled."

40.     The United States Congress has expressly allowed the possession, sale, etc. of most of the firearms banned by the Defendant, as noted herein, simply by repealing the former ban on such weapons that had been enacted into law in 1994.

41.     The United States Congress has by its recent actions rejected calls to ban the firearms banned by the Defendant.

42.     Citizens of the United States and the Commonwealth of Massachusetts have a constitutional right to possess, etc. the firearms banned by the Defendant.

43.     Plaintiffs' business in the main encompasses buying and selling the firearms banned by the Defendant through interstate commerce.

44.     Plaintiffs' business, income, and property is being substantially affected by the Defendant's ban on the firearms as mentioned herein.

45.     Plaintiffs' business with other entities and persons in other states and nations is being affected by the Defendant's ban on the firearms as mentioned herein.

## COUNT II: (Second Amendment)

46.     Plaintiffs reallege and incorporate Paragraphs 1-45 as if set forth again here.

47.     Pursuant to their rights under the Second Amendment to the United States Constitution, the Plaintiffs have a right to possess the firearms banned by the Defendant.

48.     Pursuant to Art. XVII of the Massachusetts Constitution, the Plaintiffs have a "right to keep and to bear arms for the common defence [sic]". This right is at least equal to the right under the United States Constitution.

49.     Defendant's ban on the firearms as mentioned herein has denied Plaintiffs of their rights to keep and bear arms as mentioned in the two (2) preceding paragraphs.

## COUNT III: (Equal Protection)

50.     Plaintiffs reallege and incorporate Paragraphs 1-49 as if set forth again here.

51.     Pursuant to Amendment V of the United States Constitution, no person can "be deprived of life, liberty, of property, without due process of law." Equal protection of the law is encompassed under the due process clause of this Amendment, and said Amendment is applicable to the several states through the Fourteenth Amendment to the United States Constitution.

52.     Pursuant to Amendment XIV of the United States Constitution, no State may "deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

53.     Pursuant to Art. I of the Commonwealth's Declaration of Rights, all Massachusetts citizens "have certain natural, essential and unalienable rights" that include "the right of enjoying and defending their lives and liberties, that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness."

54.     It is the law of the United States that persons may possess the firearms banned by the Defendant. Plaintiffs are persons who enjoy this right.

55.     Defendant is treating Plaintiffs unequally as compared to the majority of the citizens of the United States in that these other citizens can own the banned firearms and enjoy their full Second Amendment rights, but Plaintiffs cannot because of the ban of the firearms mentioned in this civil action.

56.     The portions of H-4885 as noted herein banning certain firearms is in conflict with the laws of the United States in that most United States citizens can possess the banned firearms, but Plaintiffs cannot.

57.     Plaintiffs have a constitutional right under Amendment V's liberty and property concepts to follow a chosen profession free from unreasonable governmental interference. This right is enforceable to the States under the Fourteenth Amendment to the United States Constitution, which itself grants citizens the right to engage in any of the common occupations of life.

58.     Plaintiffs are in a lawful occupation and are merely earning a living.

59.     Plaintiffs have dedicated several years and considerable resources in order to engage in their occupation as a licensed firearms dealer.

60.     Plaintiffs' primary business and main income derived from dealing in many of the arms banned by the legislation involved in this action.

61.     Defendant's actions as noted herein, banning business in the sale of certain firearms is and will have a serious detrimental and negative pecuniary impact on Plaintiffs' livelihood.

62.     Defendants failed to provide Plaintiffs any warning that if they delved into the legal firearms business that the Defendants would later enact laws detrimental to that business.

## **RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

a.      A declaratory judgment that H-4885 and Defendant's policies, practices, customs and related enforcement actions, individually and/or collectively prohibit the ownership, purchase, sale, and transfer of firearms, and thus violate the Second and Fourteenth Amendments;

b.      A preliminary and/or permanent injunction restraining Defendant and her officers, agents, servants, employees, and all persons in concert or participation with them who

receive notice of the injunction, from enforcing H-4885 and Defendant's policies,

practices, and customs, that individually and/or collectively prohibit the ownership,

purchase, sale and transfer of firearms;

c.     Nominal damages;

d.     Such other and further relief, including injunctive relief, against the Defendant, as

may be necessary to effectuate the Court's judgment, or as the Court otherwise deems

just and equitable; and

e.     Attorney's fees and costs (including incidental costs such as expert witness fees)

pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully submitted,
The Plaintiffs,
Gino Mario Recchia, III, individually and as
owner of Mass Armament, LLC, Inc.,
By their attorney,

DATED: October 4, 2024

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
E-mail: Richard@chamberslawoffice.com