UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GINO MARIO RECCHIA, III, individually and as owner of MASS ARMAMENT, LLC, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAURA HEALEY, in her official capacity as Governor of the Commonwealth of Massachusetts, and in her individual capacity, <br><br> Defendants. | CIVIL ACTION <br> NO. 1:24-cv-12560-RGS <br><br> **Leave to File Granted on January 18, 2025** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNOR'S MOTION TO DISMISS THE COMPLAINT**

Vanessa A. Arslanian, BBO No. 688099
*Assistant Attorney General*
Massachusetts Office of the Attorney General
Constitutional and Administrative Law Division
One Ashburton Place
Boston, MA  02108
(617) 963-2107
vanessa.arslanian@mass.gov

Dated: March 3, 2025

I.    **Plaintiffs Do Not Allege Individual-Capacity Claims Against the Governor, and Such Claims Are Barred by Qualified Immunity.**

To the extent plaintiffs assert individual-capacity claims against the Governor, their opposition makes clear that those claims should be dismissed, for two reasons. First, plaintiffs appear to agree that they do not seek individual-capacity relief against the Governor, and that they do not allege facts suggesting that the Governor was directly or personally involved in any claimed constitutional violation, as is required to state individual-capacity claims. Opp. at 7, 8, 22 (action "is, in reality, against the Act and its constitutionality, and not per se against [Governor Healey]"); *id.* at 8 ("[n]o real damages are actually sought in this suit"); *id.* at 7, 22 (complaint based on Governor's official-capacity actions). The Court therefore should dismiss the individual-capacity claims against the Governor. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 677 (2008) ("each Government official . . . is only liable for his or her own misconduct").[1]

Second, plaintiffs concede that their claimed rights were not "clearly established at the time of the defendant's alleged violation," which is required to overcome qualified immunity. *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 517 (1st Cir. 2016) (quotation omitted). Plaintiffs do not argue that their rights under either the dormant Commerce Clause or the Equal Protection Clause were "clearly established." *See generally* Opp., at 18-23. As to plaintiffs' Second Amendment claim, plaintiffs offer only that the Governor allegedly must have known of "serious

---

[1] Plaintiffs suggest that the solution "to any perceived problem" with naming the Governor as a defendant is to "replace [the Governor] with the Commonwealth of Massachusetts." Opp., at 22. To the extent the Court concludes that the Governor is not a proper party to this action, including because she lacks the "special relation" to enforcement of the challenged Act such that the Eleventh Amendment bars the official-capacity claims against her, that is further reason the complaint should be dismissed. *See Ex Parte Young*, 209 U.S. 123, 157, 161, 192 (1908) (named official must be "sufficiently connected" to enforcement of challenged law to defeat Eleventh Amendment immunity); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make [her] a proper defendant in every action attacking the constitutionality of a state statute").

1

legal problems" with the Act, but also that "the entire constitutional issues revolving around these bans is going to be settled by the Supreme Court in the near future." Opp., at 23. Thus, plaintiffs acknowledge that their claimed rights are not "clearly established." *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (where "existing precedent" does not "place[] the statutory or constitutional question beyond debate," right is not "clearly established") (quotation omitted). The individual-capacity claims should be dismissed for this reason, as well.

II.    **Plaintiffs' Dormant Commerce Clause Theories Fail.**

Plaintiffs' dormant Commerce Clause claim should be dismissed because plaintiffs incorrectly assert that precedent should not apply to their claim, and because they fail to show how the Act either discriminates or substantially burdens interstate commerce. To start, and in contrast to plaintiffs' contention, the dormant Commerce Clause analysis should not stray from precedent simply because "constitutional rights are involved" in this case. *See* Opp., at 10-11. The fact that the Second Amendment may protect certain firearms does not mean that dormant Commerce Clause analysis does not apply to a dormant Commerce Clause claim. *See, e.g., N.Y.S. Rifle & Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45 64-66 (2d Cir. 2018) (applying dormant Commerce Clause precedent to dormant Commerce Clause challenge to firearm law).

Moreover, plaintiffs have not identified how the Act is discriminatory, or how it substantially burdens interstate commerce and fails the balancing test derived from *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). *See* Opp., at 11-14. As to plaintiffs' discrimination theory, plaintiffs first assert that the Act disadvantages manufacturers of "popular" assault-style weapons banned by the Act, while advantaging manufacturers of "simple revolvers" permitted by the Act. Opp., at 11, 12. That the Act may have some negative effect on out-of-state manufacturers (or retailers) of assault-style weapons but not on out-of-state manufacturers of other weapons does not amount to discrimination, however, because such effects are fully permissible under the

2

dormant Commerce Clause, which "does not protect a 'particular structure of metho[d] of operation." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 385 (2023) (plurality op.) (quoting *Exxon Corp. v. Gov. of Md.*, 437 U.S. 117, 127 (1978).

Nor does the act discriminate if out-of-state residents can possess weapons that "millions of Massachusetts residents" cannot. Opp., at 11. The dormant Commerce Clause guards against States benefitting their own economic interests at the expense of out-of-state interests. A law's allegedly negative impact solely on in-state residents, therefore, does not offend the dormant Commerce Clause. *See Ross*, 598 U.S. at 386 (plurality op.); *see also United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 345 (2007) (dormant Commerce Clause not offended by higher prices "likely to fall upon the very people who voted for the [challenged] la[w]"). Plaintiffs' final theory of discrimination invokes the Supremacy Clause to argue that Congress authorized all citizens to possess these weapons because it did not renew the federal assault weapons ban, and that the Act's restrictions conflict with that authorization. Opp., at 12. But plaintiffs' "preemption" theory is incompatible with their dormant Commerce Clause claim, because "[d]ormant Commerce Clause restrictions apply only when Congress has not exercised its Commerce Clause power to regulate the matter at issue." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 524 (2019) (citations omitted).

Plaintiffs lastly argue that the Act imposes a "substantial burden" on interstate commerce and fails the *Pike* balancing test, but they do not identify how the Act does so, relying instead on their arguments that the Act violates the Second Amendment, affects their business, and denies them the right to practice their occupation, as well as on a conclusory claim that Massachusetts's local interest is illegitimate because there are no in-state examples of mass casualty events involving assault-style weapons. *See* Opp., at 12-13. But Massachusetts has a clear local interest in protecting its residents' safety, and the fact that the Act's restrictions are effective

3

does not render that interest illegitimate. *See Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 756 (1985) ("The States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons")); *Shelby Cty. v. Holder*, 570 U.S. 529, 590 (2013) (Ginsburg, J., dissenting) ("Throwing out" protective measure "when it has worked and is continuing to work [. . .] is like throwing away your umbrella in a rainstorm because you are not getting wet."). Because the Act "regulate[s] evenhandedly" and any incidental burden it imposes is not "clearly excessive" compared to its local benefit, it is permissible. *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 33 (2007) (citation omitted).

### III.     Plaintiffs' Revised Second Amendment Theory Fails.

Although plaintiffs' complaint alleges injury primarily based on their claimed right to sell weapons, not their individual rights to possess them, *see* Compl. ¶¶ 5-6, 14-15, 21-33, 44-45, 57-62, plaintiffs now disavow any claimed Second Amendment right to sell firearms and instead seek to vindicate only their individual possession rights. Opp., at 14. As to plaintiff Mass Armament, plaintiffs identify no authority suggesting that it has a right to *possess* firearms. *See District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (Second Amendment guarantees an "*individual* right to possess and carry weapons in case of confrontation.") (emphasis added); *see also id.* at 635 (Amendment protects "right of law-abiding, responsible citizens to use arms in defense of hearth and home").

As to plaintiff Recchia, plaintiffs' opposition virtually concedes that precedent weighs against any Second Amendment claim[2] based on his individual right to possess assault-style weapons and large-capacity magazines. Plaintiffs offer no argument with respect to large-

---

[2] Notably, plaintiffs fail to identify how their claim does not fit squarely fall within *Ocean State Tactical, LLC v. R.I.*, 95 F.4th 38 (1st Cir. 2024) and *Capen v. Campbell*, 708 F. Supp. 3d 65, 87, 92 (D. Mass. Dec. 21, 2023), *appeal pending*, 1st Cir. No. 24-1061.

4

capacity magazines, Opp. at 15, 18, and with respect to assault-style weapons, plaintiffs appear to argue principally that the first step of the *Bruen* test is satisfied, *i.e.*, that the Amendment's "plain text" covers possession of these "popular" weapons. Opp., at 17-18. Plaintiffs do not meaningfully distinguish cases which have concluded that these restrictions are consistent with the principles underpinning our Nation's tradition of firearms regulation. *See* Opp., at 15-17. Accordingly, their claim should be dismissed. *See United States v. Rahimi*, 602 U.S. 680, 692 (2024) (citing *N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26-31 (2022)).

### IV.    Plaintiffs' Equal Protection Clause Claim Fails.

Finally, plaintiffs' Equal Protection Clause claim should be dismissed because plaintiffs fail to show that Massachusetts has "'den[ied] to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). Plaintiffs allege that the Act violates the Clause because individuals and entities in other states can sell the banned weapons and practice their chosen occupation, but plaintiffs cannot. *See* Compl. ¶¶ 52-62; Opp. at 19-21 (citing authority under the Due Process Clause). But the Act does not prevent plaintiff Recchia from engaging in his profession as a gun dealer. Moreover, to establish an Equal Protection claim, plaintiffs must demonstrate that the state "treat[ed] 'those who are similarly situated' differently" within its jurisdiction. *Lyman v. Baker*, 954 F.3d 351, 364 (1st Cir. 2020). Here, plaintiffs do not make such a claim. Nor can they: the Act's challenged restrictions apply equally to all individuals and retailers within the state. Their Equal Protection Clause claim therefore should be dismissed.

## CONCLUSION

For the reasons described above, the Governor respectfully requests that the Court dismiss the complaint, with prejudice.

Respectfully submitted,

MAURA HEALEY, in her official capacity as Governor of the Commonwealth of Massachusetts, and in her individual capacity,

By her attorneys,

*/s/ Vanessa A. Arslanian*
Vanessa A. Arslanian, BBO No. 688099
Assistant Attorney General
Massachusetts Office of the Attorney General
Constitutional and Administrative Law Division
One Ashburton Place
Boston, MA  02108
(617) 963-2107

Dated: March 3, 2025                    vanessa.arslanian@mass.gov

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

                                                            /s/ *Vanessa A. Arslanian*
                                                             Vanessa A. Arslanian
                                                             Assistant Attorney General

Dated: March 3, 2025