UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GINO MARIO RECCHIA, III,** individually and as owner of MASS ARMAMENT, LLC, INC., and **MASS ARMAMENT, LLC, INC.**<br><br>Plaintiffs,<br><br>v.<br><br>**ANDREA JOY CAMPBELL,** in her official capacity as Attorney General of the Commonwealth of Massachusetts; and<br><br>**TERRENCE M. REIDY,** in his official capacity as Secretary of the Executive Office of Public Safety and Security of the Commonwealth of Massachusetts,<br><br>Defendants.[1] | Civil No.: 1:24-cv-12560-RGS |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

On July 25, 2024, the Legislature of the Commonwealth of Massachusetts drafted H-4885 and the Governor of Massachusetts signed it into law (hereinafter, the "ACT" or "H-4885"). Plaintiffs submit that the ACT violates the Second Amendment to the United States Constitution and is unconstitutional with respect to "assault type weapons" and their magazines or ammunition feeders being banned throughout the Commonwealth as well as the duties now required of firearm retailers and their consumers. Plaintiffs are not making any claims relative to

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Maura Healey is hereby substituted for Attorney General Andrea Joy Campbell, and Secretary of the Executive Office of Public Safety and Security, Terrence M. Reidy.

1

other sections of H-4885. In other words, they are not challenging whether or not those other sections can stand constitutional muster since they have little or no effect on Plaintiffs at this time. Plaintiffs do however contend that sections of H-4885, enacted into law by the Commonwealth of Massachusetts' Legislature and Governor, violate Plaintiffs' rights under the Second Amendment to the United States Constitution, the Supremacy Clause, Article VI, Paragraph 2, the Fifth and Fourteenth Amendments to Equal Protection, and the Dormant Commerce Clause of the United States Constitution.

## I. INTRODUCTION

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." The Second Amendment is fully applicable to the Commonwealth of Massachusetts through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805.

2. The Second Amendment's "reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.' " *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2132 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.*

3. "Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2143 (citing *Caetano v. Massachusetts*, 577 U.S. 411, 411-412 (2016) (*per curiam*), concerning stun guns). Moreover, "semiautomatic rifles," such as those proscribed under the ACT [2] "traditionally have been widely accepted as lawful possessions." *Staples v. United States*, 511 U.S. 600, 612 (1994).

4. Nonetheless under the ACT, the Commonwealth of Massachusetts

2

unconstitutionally bans commercial retailers from the commercial sale and transfer of a broad swath of semiautomatic rifles i.e. "assault style rifle" in common use for lawful purposes protected under the Second and Fourteenth Amendments to the United States Constitution in violation of the Supremacy Clause where the Federal Government does not.

5. As the Supreme Court clarified in June 2022, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. Ultimately, "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Id.*

6. Here, the plain text of the Second Amendment covers the conduct that Plaintiffs were engaging in (i.e., "keep and bear arms"), just as it covers the arms they wish to keep and bear. *Id.* at 2132 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms"). Indeed, "Plaintiffs' desire to commercially purchase, import and sell to the public newer models of semiautomatic rifles in common use throughout the United States is covered by the Second Amendment and presumptively protected *Id.*

7. *Heller* has already established that historically: bearable arms presumptively protected by the Second Amendment cannot be banned unless they are both dangerous *and* unusual. *Heller*, 554 at 627.

8. The semiautomatic rifles that Plaintiffs are now prohibited to import and sell to Commonwealth of Massachusetts citizens are in common use for lawful purposes today throughout the country and thus cannot be dangerous *and* unusual. The nation's historical traditions, ironically beginning in the Commonwealth, 250 years ago at the Battle of Lexington and Concord, fails to support the Commonwealth's ban.

9. Under the Supreme Court's analysis, Defendants' semiautomatic rifle Ban also violates the Second and Fourteenth Amendments to the United States Constitution. The analysis is straightforward: (a) Plaintiffs are not prohibited from exercising their right to keep and bear arms; (b) because Plaintiffs' proposed conduct is covered by the Second Amendment's plain text, the government must justify the semiautomatic rifles being banned as being consistent with this

Nation's tradition of firearm regulation; and (c), as *Heller* and *Bruen* establish, there is no historical basis for banning arms that are not prohibited by the Federal Government and are in common use for lawful purposes throughout the United States. Therefore, the "assault rifle ban" must be declared unconstitutional and enjoined.

## II.  JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

11. This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the Commonwealth of Massachusetts, of the rights, privileges, or immunities secured by the United States Constitution.

12. Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in the District where the action is being brought.

13. The Eastern Division of this Court is appropriate pursuant to Local Rule 40.1(d)(l)(C) because all parties residing in the District reside in the Eastern Division.

## III. PARTIES

14. Plaintiff Gino M. Recchia, III (hereinafter, "Plaintiff Recchia") is a Massachusetts citizen and resident.

15. Plaintiff Recchia is the sole owner of Mass Armament LLC. He holds a valid Federal Firearms License (hereinafter, "FFL") and a Massachusetts License to Conceal Carry ("LLC")

17. Plaintiff Mass Armament LLC (hereinafter, "Mass Armament") is a firearms commercial dealer located at 95 Mechanic Street, Unit 1 in Bellingham, Massachusetts. incorporated in 2018 within the Commonwealth of Massachusetts by Plaintiff Recchia.

18. Defendant Andrea Joy Campbell (hereinafter, "Defendant Campbell") is sued in her official capacity as Attorney General of the Commonwealth of Massachusetts.

19. Defendant Campbell is an independent constitutional officer responsible for regulating, implementing, and enforcing the Commonwealth's laws and regulations related to the sales, transfer, possession, and ownership of firearms.

20. Defendant Campbell is therefore responsible for regulating, implementing, and enforcing the Commonwealth's laws and regulations which collectively comprise the ACT of which Plaintiffs complain herein.

21. Defendant Campbell has enforced, is presently enforcing, and is threatening to enforce the ACT.

22. Defendant Campbell has authority to cease such enforcement of the ACT. *See* M.G.L. c. 12 § 1 and § 3.

23. Defendant Terrence M. Reidy (hereinafter, "Defendant Reidy") is sued in his official capacity as Secretary of the Commonwealth's Executive Office of Public Safety and Security (EOPSS), *see* https://bit.ly/3ppS94N.

24. Defendant Reidy is an independent constitutional office within the Executive branch, *see* https://bit.ly/3NXjtR1; https://bit.ly/44tCfF7.

25. Defendant Reidy is responsible for overseeing the Firearms Records Bureau (FRB) through his Department of Criminal Justice Information Services (DCJIS).

26. Defendant Reidy is thus responsible for regulating and enforcing the Commonwealth's laws and regulations related to the sales, transfer, possession, and ownership of firearms which collectively comprise the ACT.

27. Defendant Reidy has enforced, is presently enforcing, and is threatening to continue to enforce the ACT.

28. Defendant Reidy has authority to cease such enforcement of the ACT consistent with the relief Plaintiffs seek through this action. *See* M.G.L. c. 6A § 2 and § 3.

## IV. FACTS

29. On or about July 25, 2024, the Governor of Massachusetts signed into law H-4885 the "ACT".

30. *Inter alia*, the ACT transformed the definition of "assault-style firearm", including many of the most popular semiautomatic rifles or their copies sold in the United States,

and others that will be named by a newly formed board and roster (Section 16); "feeding device" and "firearm", (Section 20); "large capacity feeding device" (Section 21); "large capacity firearm" (Section 22).

31.   *Inter alia*, the ACT requires retailers to act as quasi law enforcement officers by confiscating licensing documents presented by customers that appear to be "expired, suspended or revoked" and; restricts to whom and under what conditions a retailer may sell firearms. (Section 123).

32.   *Inter alia*, the ACT authorizes the forming of a "firearm control advisory board" which, among other things, will help make a list of which firearms can be sold and purchased in the Commonwealth of Massachusetts (Section 131½ *et seq.*).

33.   *Inter alia*, the ACT virtually bans the "possess[ion], own[ership], sell[ing] or otherwise transfer[ring] in the commonwealth [sic] or import into the commonwealth [sic] an assault-style firearm, or a large capacity feeding device." (Section 131M).

34.   Plaintiff, Mass Armament opened to the public in 2019.

35.   Plaintiff Recchia derives his livelihood from Mass Armament and usually employs two (2) others.

36.   Recchia receives all of his income from Mass Armament's business.

37.   Mass Armament sells new and used firearms of many types, including many of the items banned by the ACT; that is, assault-style rifles, large capacity magazines and feeding devices, along with ammunition, parts, accessories, knives, collectables, cleaning supplies, and targets.

38.   More than 50% of Mass Armament sales were derived from the sale of the firearms and accessories now banned by the ACT.

39. The majority of Mass Armament purchases are from out-of-state manufacturers, retailers, private sellers and other industry members. There are some in-store and in-state purchases and sales, but the majority of items are imported from outside the state; purchases now banned by the ACT.

40. The ACT has restricted the majority of purchases and sales Mass Armament can hereon legally conduct.

41. Mass Armament's main business is, and has been built up, centered around firearms and large-capacity magazines banned by the ACT.

42. It is estimated that more than 50% of Plaintiffs' business will be lost because of the ACT.

43. It is estimated that the majority of Mass Armament's business is conducted with out-of-state sellers and buyers.

44. It appears possible at this early enforcement of the ACT that Mass Armament may either lay off employees and/or go out of business.

45. Mass Armament's business was built primarily by dealing in the firearms banned by the ACT.

46. Undersigned counsel asked Plaintiffs to send counsel the company's records from the time the company came into existence until the near-present. Counsel and his staff have examined Plaintiff's *Excel Spreadsheets*/Records and Counsel has extrapolated from said *Spreadsheets* the following information:

### Sales of Weapons Now Banned by the Commonwealth

**BOOK:**

|    |           |           | **Pre-Ban In:** | **Est. Profit:** |
|----|-----------|-----------|-----------------|------------------|
| 1. | 12-2-18   | 8-13-19   | 72              | $77,200          |
| 2. | 8-8-19    | 6-2-20    | 159             | $145,200         |
| 3. | 6-29-20   | 12-30-20  | 229             | $253,600         |
| 4. | 12-30-20  | 5-29-21   | 276             | $325,000         |

| | | | | |
|---|---|---|---|---|
| 5. | 5-29-21 | 1-31-22 | 170 | $145,700 |
| 6. | 1-31-22 | 11-28-22 | 121 | $98,500 |
| 7. | 11-29-22 | 7-17-23 | 134 | $91,600 |
| 8. | 7-17-23 | 2-13-24 | 230 | $233,600 |
| 9. | 3-13-24 | 8-13-24 | 413 | $347,700 |
| 10. | 8-13-24 | 2-21-25 | 194 | $137,600 |
| | **Average All Books (mean)** | | 199 | $185,570 |
| | **After Ban Became Effective** | | | |
| 11 | 2-21-25 | 5-1-25 | 5 | $7,500 |

While the above is not completely accurate because the actual total loss per Book-year will be considerably more than $185,000.00 (because included in Book 10 are sales of less than one year), these general figures show that Plaintiffs are suffering perhaps unsustainable losses due to the ban at issue in this case. In other words, these several Books provided by Plaintiffs as the business records of Plaintiffs are Books that encompass less than a year. Plaintiff has been in business for approximately six (6) years before the Ban was signed into law. Thus, Books 1-9 summarized above cover a little less than those six (6) years. During that less than six (6) years, Plaintiffs' estimated profit on the now-banned weapons was approximately $1,718,100.00. Generously dividing that estimated profit by six years equal $286,350.00 per year. The same would apply as to the banned weapons dealt in for the six (6) year period: 1998 banned weapons sold over six (6) years, or a mean average of 333 per year. Thus, undersigned Counsel's extrapolation from Plaintiff's business records is perhaps 60% lower than it actually is.

## V. CLAIMS

### COUNT I
### DEPRIVATION OF CIVIL RIGHTS SUPREMACY CLAUSE, ARTICL VI, PARAGRAPH 2 AND DORMANT COMMERCE CLAUSE U.S. CONST., ARTICLE. I § VIII CLAUSE III 42 U.S.C. § 1983

47.   Plaintiffs re-allege and incorporate paragraphs 1-46 as if set forth again here.

48.    In 1994 Congress enacted legislation banning many of the same firearms listed in the ACT, *see*, Title XI of P.L. 103-322 (September 13, 1994), (codified at 18 USC 921 *et seq.*), but the ACT appears to encompass even more firearms than the Federal legislation of 1994.

49.    Title XI was automatically repealed by Congress 10 years after it became enacted. *Sec. id.* Sec. 110105 (2).

50.    Federal efforts to reinstate the Title XI ban have been made since its repeal. All have failed. On April 17, 2013 the United States Senate failed to pass a bill similar to Title XI. Although the House of Representatives narrowly voted in favor of passing new firearms restrictions on July 29, 2022, the bill died in the Senate at the end of the term.

51.    There is an actual and present controversy between the parties.

51.    Under the United States Constitution, Art. I § 8, Congress has the power "to regulate Commerce with foreign Nations, and among the several States".

52.    The Defendants do not have the power under the Massachusetts Constitution, Part I, Art. IV, to override the United States Congress' Commerce Clause power, in that said Article specifically states that Defendant has the right to govern themselves except when such power is "[expressly] delegated to the United States of America in Congress assembled."

53.    The United States Congress has expressly allowed the possession, sale, etc. of most of the firearms banned by the Defendant, as noted herein, simply by repealing the former ban on such weapons that had been enacted into law in 1994.

54.    The United States Congress has by its recent actions rejected calls to ban the firearms now banned by the Defendants.

55.    Citizens of the United States have a constitutional right to possess, etc. the firearms banned by the Defendants.

56. Plaintiffs' business in the main encompasses buying and selling the firearms banned by the Defendants through interstate commerce.

57. Plaintiffs' business, income, and property is being substantially affected by the Defendants' ban on the firearms as mentioned *supra*.

58. Plaintiffs' business with other entities and persons in other states and nations is being affected by the Defendants' ban on the firearms as mentioned herein, all in violation of the Commerce clauses mentioned *supra*.

## COUNT II
## DEPRIVATION OF CIVIL RIGHTS RIGHT TO KEEP AND BEAR ARMS U.S. CONST., AMENDS. II AND XIV 42 U.S.C. § 1983

59. Plaintiffs re-allege and incorporate paragraphs 1-58 as if set forth again here.

60. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. Pursuant to their rights under the Second Amendment to the United States Constitution, the Plaintiffs have a right to possess the firearms banned by the Defendant.

61. Pursuant to Art. XVII of the Massachusetts Constitution, the Plaintiffs have a "right to keep and to bear arms for the common defence [sic]". This right is at least equal to the right under the United States Constitution.

62. Defendants' ban on the firearms as mentioned herein has denied Plaintiffs of their rights to keep and bear arms as mentioned in the two (2) preceding paragraphs.

## COUNT III
## DEPRIVATION OF CIVIL RIGHTS EQUAL PROTECTION U.S. CONST., AMENDS. XIV 42 U.S.C. § 1983

63. Plaintiffs re-allege and incorporate paragraphs 1-62 as if set forth again here.

64. Pursuant to Amendment V of the United States Constitution, no person can "be deprived of life, liberty, of property, without due process of law." Equal protection of the law is

encompassed under the due process clause of this Amendment, and said Amendment is applicable to the several states through the Fourteenth Amendment to the United States Constitution.

65. Pursuant to Amendment XIV of the United States Constitution, no State may "deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

66. Pursuant to Art. I of the Commonwealth's Declaration of Rights, all Massachusetts citizens "have certain natural, essential and unalienable rights" that include "the right of enjoying and defending their lives and liberties, that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness."

67. It is the law of the United States that persons may possess the firearms banned by the Defendant. Plaintiffs are United States Citizens and persons who enjoy this right.

68. Defendants are not treating Plaintiffs equally compared to the majority of the citizens of the United States in that these other citizens can enjoy their full Second Amendment rights nonetheless Plaintiffs cannot because of the ACT banning the semiautomatic rifles i.e. firearms mentioned in this civil action.

69. The portions of H-4885 as noted herein banning certain firearms is in conflict with the laws of the United States of America in that most United States citizens can legally possess the banned firearms but Plaintiffs cannot.

70. Plaintiffs have a constitutional right under Amendment V's liberty and property concepts to follow a chosen profession free from unreasonable governmental interference. This right is enforceable to the States under the Fourteenth Amendment to the United Staes Constitution, which itself gives citizens the right to engage in any of the common occupations of life.

71. Plaintiffs are in a lawful occupation and are merely earning a living.

72. Plaintiffs have dedicated several years and considerable resources in order to engage in their occupation as a firearms dealer.

73. Plaintiffs' primary business and main income derived from dealing in many of the arms banned by the legislation involved in this action.

74. Defendants' actions as noted herein, banning business in the sale of certain firearms is and will have a serious detrimental impact on Plaintiffs' livelihood.

75. Defendants never gave Plaintiffs any warning that if they delved into the legal firearms business that the Defendants would later enact laws detrimental to that business.

## **PRAYER**

WHEREFORE, Plaintiffs pray for the following relief:

1. A declaratory judgment that H-4885, the ACT, as defined is Unconstitutional to the United States Constitution;

2. A permanent injunction restraining Defendants, their successors assignees, and their officers, agents, servants, employees, and all persons in concert or participation with them, and all who have notice of the injunction, from enforcing H-4885, the ACT and preventing otherwise qualified individuals from importing, purchasing and possessing new semiautomatic rifles that are proscribed from sale under the ACT;

3. Attorney's fees and costs (including incidental costs such as expert witness fees) pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

4. Such other and further legal and equitable relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems meet, just and proper.

Respectfully submitted,<br>
The Plaintiffs,<br>
Gino Mario Recchia, III, individually and as<br>
owner of Mass Armament, LLC, Inc.,<br>
By their attorney,

DATED: June 16, 2025

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
E-mail: Richard@chamberslawoffice.com

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 16, 2025.

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.