UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-12560-RGS

GINO MARIO RECCHIA, III, individually and as owner of MASS ARMAMENT, LLC, INC., and MASS ARMAMENT, LLC, INC.

v.

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, and TERRENCE M. REIDY, in his official capacity as Secretary of the Executive Office of Public Safety and Security of the Commonwealth of Massachusetts

MEMORANDUM AND ORDER ON MOTION TO DISMISS

August 5, 2025

STEARNS, D.J.

Plaintiff Gino Mario Recchia, III filed this putative class action against defendants Andrea Joy Campbell, in her official capacity as Attorney General of the Commonwealth of Massachusetts, and Terrence M. Reidy, in his official capacity as Secretary of the Executive Office of Public Safety and Security of the Commonwealth of Massachusetts. Recchia challenges the provisions of the 2024 Act Modernizing Firearm Laws that ban the importation and sale of large capacity firearms (assault-style weapons) and large capacity feeding devices. *See* Mass. Gen. Laws ch. 140, § 131M(a). Defendants move to dismiss the First Amended Complaint (FAC) pursuant

to Fed. R. Civ. P. 12(b)(6). For the following reasons, the court will allow the motion.

## BACKGROUND

On July 25, 2024, the Massachusetts Legislature enacted H-4885, "An Act Modernizing Firearm Laws," which Governor Maura Healey promptly signed into law.[1] The Act modified or added the definitions of "assault-style firearm," "large capacity firearm," and "large capacity feeding device," among others, and banned the import and sale of large capacity firearms and accessories (with various grandfathering provisions for gun owners and collectors in lawful possession of assault weapons prior to the passage of the Act). *See* Mass. Gen. Laws ch. 140, § 121

Plaintiff Recchia is a Massachusetts resident and sole owner of a Massachusetts gun store, Mass Armament, LLC (Mass Armament) (together, Recchia or plaintiff). *See* FAC (Dkt. # 26) ¶¶ 14-15. Recchia opened Mass Armament for business in 2019 and derives his livelihood from its sales. *Id.* ¶¶ 34-35. Mass Armament offered customers "new and used firearms of many types, including many of the items banned by the Act; that is, assault-style rifles, large capacity magazines and feeding devices," as well as

---

[1] The Act took effect on October 2, 2024, after the Governor issued an executive order inserting an emergency declaration accelerating the Act's effective date.

ammunition and firearm accouterments. *Id.* ¶ 37. Over half of Mass Armament's sales consisted of firearms and accessories now banned by the Act, while the bulk of its inventory was purchased from out-of-state manufactures, retailers, and private sellers. *Id.* ¶¶ 38-40.

In his initial Complaint (filed on October 4, 2024), Recchia named Governor Healey, in her official, as well as individual, capacity as the sole defendant. *See* Dkt. # 1. The original Complaint alleged violations of the dormant Commerce Clause (Count I), the Second Amendment (Count II), and the Equal Protection Clause (Count III). *See id.* ¶¶ 37-62. Following the court's April 17, 2025 hearing on the Governor's motion to dismiss the Complaint, the court, "with the explicit or tacit consent of the parties," dismissed the individual-capacity claims against Governor Healey with prejudice and dismissed the dormant Commerce Clause and Equal Protection Clause claims without prejudice. *See* Dkt. # 19. The court also granted Recchia leave to amend the Complaint. *See id.* That same day, following the hearing, the First Circuit issued its decision in *Capen v. Campbell*, 134 F.4th 660 (1st Cir. 2025), affirming another district court's denial of a preliminary injunction in a Second Amendment challenge to the prohibition of the sale and possession of assault weapons and large-capacity

3

magazines, as appearing in a previous version of the General Laws, ch. 140, § 131M.[2]

On June 16, 2025, Recchia filed a First Amended Complaint, substituting as defendants Attorney General Campbell in her official capacity and Secretary Reidy in his official capacity. *See* FAC at 1. The Amended Complaint sets out essentially the same claims as the initial Complaint: violations of the dormant Commerce Clause (as well as the Supremacy Clause) (Count I); the Second Amendment (Count II); and the Equal Protection Clause of the Fourteenth Amendment (Count III). Recchia seeks a declaratory judgment that the Act is unconstitutional, together with a permanent injunction enjoining defendants from enforcing the provisions of the Act and its restrictions on the importation, purchase, possession, transfer, and sale of assault-style firearms and large capacity feeding devices (as well as reasonable attorney's fees and costs). *See* FAC at 12.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009),

---

[2] The 2024 Act amended § 131M to extend the ban to the import of assault-style weapons and large capacity firearms. The balance of the statute was left unchanged.

4

quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. If the allegations in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint will be dismissed. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## DISCUSSION

**Second Amendment Claim (Count II)**

Recchia concedes in his opposition to the motion to dismiss that "the Second Amendment issue may be considered moot at this time because of the First Circuit's decision in *Capen*." *See* Dkt. # 30 at 2. But he contends that he respectfully disagrees with *Capen*, explaining that when the Second Amendment was ratified, the American citizen solider was equipped with a rifle equal to that of the best contemporary army in the world (presumably the British army), and that should still be the case today. *See* Dkt. # 30 at 6.

5

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  "[L]ike most rights, the right secured by the Second Amendment is not unlimited." *Capen*, 134 F.4th at 665, quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  "One such limitation is a 'historical tradition of prohibiting the carrying of dangerous and unusual weapons' that were not 'in common use' at the time the Second Amendment was drafted."  *Capen*, 134 F.4th at 665, quoting *Heller*, 554 U.S. at 627.  The Supreme Court has established a two-part test that courts are to use in assessing Second Amendment claims. "Under [this] approach, we first consider whether 'the Second Amendment's plain text covers'" the conduct at issue.  *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 43 (1st Cir. 2024), quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022).  "If it does, we then consider whether" a prohibition, arguably trenching upon the Second Amendment, "is 'consistent with this Nation's historical tradition of firearm regulation' and thus permissible under the Second Amendment."  *Id.*, quoting *Bruen*, 597 U.S. at 17.

The court agrees with the parties that *Capen* forecloses the Second Amendment claim.  In *Capen*, the First Circuit held that the Massachusetts

6

ban on assault weapons and large capacity feeding devices was "consistent with this Nation's historical tradition of firearm regulation," and imposed a *de minimis* burden on the right to self-defense (because civilian self-defense "rarely – if ever – calls for the rapid and uninterrupted discharge of many shots, much less more than ten"). *Capen*, 134 F.4th at 675-676. As the First Circuit observed, the ban was enacted in response to "unprecedented societal concern" over mass shootings, and given the ban's focus on exotic modern weaponry, did not offend the Second Amendment. *Id.* at 676; *see also Ocean State Tactical*, 95 F.4th at 43-45 (upholding the Rhode Island legislature's ban on large capacity magazines). As Recchia is unable to identify any meaningful distinction between *Capen*, *Ocean State Tactical*, and the relevant 2024 portions of the Massachusetts Act, the court will dismiss Count II.[3]

**Dormant Commerce Clause Claim (Count I)**

Recchia next alleges that Massachusetts, through the importation and exportation prohibitions of the Act, has "estopped the manufacturers and

---

[3] Additionally, to the extent that Recchia grounds his Second Amendment claim on an alleged "right" to sell firearms, the Second Amendment does not confer a "freestanding right" to sell firearms that is "wholly detached from any customer's ability to acquire firearms." *United States v. Vlha*, 142 F.4th 1194, 1198 (9th Cir. 2025), quoting *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc).

local Federal firearms dealers [] from conducting business in Massachusetts," in violation of the Commerce Clause. FAC ¶ 58; *see* Dkt. # 30 at 8.

The Commerce Clause empowers Congress "[t]o regulate commerce . . . among the several states." U.S. Const. art. I, § 8, cl. 3. The Supreme Court "has also read 'a further, negative command' into the Commerce Clause." *Am. Trucking Ass'n, Inc. v. Rhode Island Tpk. & Bridge Auth.*, 123 F.4th 27, 35 (1st Cir. 2024), quoting *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995). Under the "dormant" Commerce Clause, states may not pass laws that "discriminate[] against or unduly burden[] interstate commerce." *Am. Trucking Ass'n, Inc.*, 123 F.4th at 35, quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997).

Dormant Commerce Clause claims are analyzed under a two-tiered approach. *See Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 486 U.S. 573, 578-579 (1986). The first-tier test asks whether the state law at issue discriminates directly against interstate commerce or directly regulates interstate commerce. *See id.* at 579. If the state law does either, it violates the Commerce Clause and is "generally struck down . . . without

8

further inquiry." *Id.*[4] Under the second tier, which has come to be known as the *Pike* balancing test, *see Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), when "a statute has only indirect effects on interstate commerce and regulates evenhandedly, [the Court] examine[s] whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman Distillers Corp.*, 486 U.S. at 579.

Here, Recchia's revised dormant Commerce Clause claim is substantially identical to his assay in the original Complaint (which the court previously dismissed). *See* Dkt. # 19. Looking to the first-tier approach, Recchia's Amended Complaint is devoid of any allegation that the Legislature enacted the Act's restrictions on the import and sale of assault-style weapons and large capacity devices with a discriminatory purpose. Recchia argues that the Act is discriminatory because it "favors manufacturers of some weapons over the manufacturers of the banned weapons, thus discriminating against the latter," and that the "Act bann[ing] some firearms and not all others amounts to discrimination against the banned weapon[s]," *see* Dkt. # 12 at 12. However, the Act contains no

---

[4] A state discriminates against interstate commerce "when it enacts 'economic protectionism' by imposing 'regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Am. Trucking Ass'n, Inc.*, 123 F.4th at 35, quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988).

9

"differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *See Granholm v. Heald*, 544 U.S. 460, 472 (2005). By its terms, the Act's restrictions apply to all regulated weapons, regardless of where they are manufactured.[5]

Turning to the second tier, Recchia has failed to plausibly allege that the Act imposes a significant burden on interstate commerce. *See Pike,* 397 U.S. at 142. Recchia alleges that his business, income, and property values are substantially affected by the assault weapons ban. *See* FAC ¶¶ 46, 72-74. However, he cites to no authority for the proposition that any specific quantum of economic loss born by a subset of retailers is sufficient to demonstrate a substantial burden on the broad stream of interstate commerce. What Recchia has to say as to the Act's effect on other federal firearms dealers in the Commonwealth is speculative and presumes that all firearm retailers in Massachusetts depend on the sale of assault weapons and accessories as their major source of income. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 387 (2023) (plurality opinion) (noting that alleged harm that is "nothing more than a speculative possibility" does not amount to a "substantial harm" to interstate commerce). An undue impact

---

[5] Recchia is not a firearms manufacturer and, therefore, would not appear to have standing to challenge the Act based on its impact on out-of-state manufacturers.

10

on the stream of interstate commerce is gauged by its effect on the public as a whole and not by the disadvantageous effects felt by a small subset of participants in its ebb and flow. *Cf. United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 345 (2007) (dormant Commerce Clause not offended by higher prices "likely to fall upon the very people who voted for the [challenged] la[w]"). Nor does Recchia persuasively allege that the Act's burdens on interstate commerce are "clearly excessive in relation to the putative local benefits," which include the Commonwealth's manifest interest in protecting Massachusetts citizens from the "growing and real threat" of mass shootings and gun violence. *Pike*, 397 U.S. at 142; *see* Dkt. # 29 at 18, citing *Capen*, 134 F.4th at 673. Accordingly, the court will dismiss Count I.[6]

---

[6] Under this same count, Recchia appears to invoke the Supremacy Clause to argue that Congress authorized all citizens to possess the Act's banned weapons because it did not renew the federal assault weapons ban of 1994, Title XI of P.L. 103-322 (September 13, 1994). *See* FAC ¶¶ 48-53; Dkt. # 12 at 9-14. Recchia contends that the Act's restrictions conflict with Congress's authorization and, therefore, Massachusetts is usurping Congress's power to regulate interstate commerce. *See* Dkt. # 30 at 8. Besides pointing to no authority in support of this argument, Recchia's Supremacy Clause argument is incompatible with his dormant Commerce Clause claim because "[d]ormant Commerce Clause restrictions apply only when Congress has not exercised its Commerce Clause power to regulate the matter at issue." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 524 (2019) (citations omitted).

**Equal Protection Claim (Count III)**

Recchia alleges that, as a United States citizen domiciled in Massachusetts, he is being subject to inferior treatment than that received by many other citizens who reside in states where they are permitted to possess the banned firearms and "earn a living [by selling them] in a legitimate business." *See* FAC ¶ 68; Dkt. # 30 at 10. Recchia argues this amounts to a violation of the Equal Protection Clause under the Fourteenth Amendment.[7] *See* Dkt. # 30 at 12.

First, "[t]o the extent that the [e]qual [p]rotection challenge is based on the Second Amendment's fundamental right to bear arms and the disparate treatment of groups in exercising that right . . . that challenge is subsumed in the Second Amendment inquiry." *Pena v. Lindley*, 898 F.3d, 969, 986 (9th Cir. 2018); *see Teixeira v. Cnty. of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016) (affirming dismissal of an equal protection challenge based on infringement of the right to bear arms because "the equal protection

---

[7] Recchia asserts claims under both the Fifth and Fourteenth Amendments' equal protection guarantees. *See* FAC ¶¶ 64, 70. Fifth Amendment equal protection claims are evaluated under the same standards as equal protection claims under the Fourteenth Amendment. *See Perrier-Bilbo v. United States*, 954 F.3d 413, 432 n.14 (1st Cir. 2020). However, the Fifth Amendment Due Process Clause applies "only to actions of the federal government – not to those of state or local governments." *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007). The court, accordingly, will end any discussion of the Fifth Amendment claim here.

12

challenge [was] 'no more than a [Second] Amendment claim dressed in equal protection clothing,'" quoting *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001)), on *reh'g en banc*, 873 F.3d 670, 676 n.7 (9th Cir. 2017) (affirming dismissal of the equal protection claim "for the reasons given in the panel opinion"); *cf. Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citation and internal quotation marks omitted).

    Second, even if the court were to entertain the equal protection claim, equal protection means that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Plaintiffs claiming an equal protection violation must first identify and relate *specific instances* where persons *situated similarly in all relevant respects* were treated differently." *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in original) (citation and internal quotation marks omitted); *see also McCoy v. Town of Pittsfield*, 59 F.4th 497, 508 (1st Cir.

2023) (explaining that an equal protection claim sounding in a fundamental rights theory typically requires an appropriate comparator). Here, Recchia does not allege the existence of an individual who was "similarly situated [to him] in all relevant respects" within the state's jurisdiction but was treated more favorably. Nor does the Act prevent Recchia from engaging in his profession as a gun dealer.[8] Thus, the court will dismiss Count III.

## ORDER

For the foregoing reasons, the FAC is dismissed with prejudice. The Clerk will enter judgment for Campbell and Reidy and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[8] In his opposition to the motion to dismiss, Recchia also alleges that "one of the privileges and immunities" of citizenship that he has been deprived of is the right to possess and carry the banned firearms and, moreover, that he is entitled to a privileged right to earn a "living in a legitimate business" related to selling the banned firearms. *See* Dkt. # 30 at 11-13. Article IV, § 2, cl. 1 of the Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. The Clause entitles residents of one state to enjoy the same rights as citizens of other states. *See Selevan v. New York Thruway Auth.*, 584 F.3d 82, 102 (2d Cir. 2009). Recchia misconstrues this Clause, which protects individual, "out-of-state residents from the discriminatory laws of other states and their municipalities." *Connecticut Citizens Def. League, Inc. v. Thody*, 664 F. Supp. 3d 235, 251 (D. Conn. 2023), *aff'd,* 2024 WL 177707 (2d Cir. Jan. 17, 2024). That is not the case here, as Recchia resides solely in Massachusetts.